Vernon E. THOMPSON, Appellee–
Below/Complainant–Below,
Appellant,

v.

DOVER DOWNS, INC., Appellant–
Below/Respondent–Below,
Appellee.

No. 40,2005.

Supreme Court of Delaware.

Submitted: Aug. 11, 2005.
Decided: Nov. 3, 2005.

Lexie S. McFassel, Esquire, (argued) of Community Legal Aid Society, Inc., Dover, Delaware; Diana S. Erickson, Esquire, of Community Legal Aid Society, Inc., Georgetown, Delaware; for Appellant.

Thomas P. Preston, Esquire, and David K. Sheppard, Esquire, (argued) of Blank Rome LLP, Wilmington, Delaware; for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

JACOBS, Justice.

Vernon Thompson ("Thompson") appeals from a Superior Court order reversing a decision and order of the Delaware Human Relations Commission ("DHRC"). Security officials of Dover Downs, Inc. ("Dover Downs") had denied Thompson access to its casino, because Thompson insisted that his dog accompany him, yet Thompson refused to answer the officials' inquiries about what his alleged support animal had been trained to perform. Accordingly, Dover Downs refused to allow Thompson access accompanied by his dog. The DHRC determined that by denying access, Dover Downs had unlawfully discriminated against Thompson in violation of the Delaware Equal Accommodations Law.[1] As a result, the DHRC awarded Thompson $5,000 in damages and assessed a $5,000 civil penalty against Dover Downs. In reversing the DHRC, the Superior Court found that the DHRC had made errors of law and findings of fact that were unsupported by substantial evidence of record.[2] We agree and, accordingly, affirm.

### FACTS

#### A. Events Leading To The DHRC Proceeding

Thompson is a "handicapped person" within the meaning of 6 *Del. C.* § 4502(8). On July 31, 2002, Thompson attempted to enter Dover Downs Slots, a casino, accompanied by a four-month old dog. The dog had no leash but was wearing a vest which stated that the dog was a support animal. The vest was tied at the neck by a nylon clothesline.

Kevin Brown, a Dover Downs security officer responsible for, among other things, ensuring that unauthorized persons do not enter the gaming floor, was stationed at the main entrance of the casino. Before Thompson entered the casino floor, Officer Brown stopped Thompson and informed him that pets were not allowed on the casino floor. Dover Downs does, however, make an exception for support animals. Thompson represented that his dog was his support animal and presented Brown with an identification card.

Although Officer Brown had previously encountered support animals, he did not recognize Thompson's dog to be a trained support animal. He therefore asked Thompson what his dog was trained to do. Thompson refused to answer the question. At that point, Officer Brown, consistent with his training, radioed for a supervisor.

Soon thereafter, George Bryan, a security supervisor, arrived, and informed Thompson that he was Brown's supervisor. Officer Brown explained to Bryan that Thompson wanted to bring his dog into the casino. Thompson responded that he was disabled and that he wanted to enter the casino. Bryan responded that pets were not permitted on the casino floor. Thompson again noted his disability, after which Bryan asked Thompson about his dog's training. Thompson responded that he did not have to answer the question, asserting that it was a violation of his civil rights.

Bryan advised Thompson that if he would not provide information about his dog's training, he could not permit the dog on the casino floor. Bryan also told Thompson that he (Bryan) would have to

---

1. 6 *Del. C.* §§ 4501–4512 (1999).

2. *Dover Downs, Inc. v. Thompson,* C.A. No. 04A–01–003, Mem. Op. (Del.Super.Ct. Dec. 30, 2004).

contact his manager.[3] Shortly thereafter, Bill Beever, a Security Shift Manager, arrived at the casino entrance. As such, Beever had oversight over all Security Officers on duty, which included Officer Brown and Supervisor Ryan.

Thompson then recited the foregoing events to Beever, who then asked Thompson about his dog's training. Thompson responded that he did not have to answer that question. Thompson then handed Beever a card containing a telephone number for the "ADA Information Line." The ADA Information Line is a resource of the United States Department of Justice designed to provide technical assistance to persons and businesses having questions about the Americans with Disabilities Act of 1990 (the "ADA").[4] Thompson insisted that Beever call the ADA Information Line, which Beever did.

After being connected to an ADA representative, Beever explained the events preceding his call and described Thompson's dog, including its age and attire. The ADA representative advised that although Beever was not entitled to ask about Thompson's disability, he could ask about the dog's training, and he could also deny the dog entry into the casino if Thompson refused to answer the training-related questions. The ADA representative noted that cards and vests are not indicative of training and can be easily obtained in a store, and that it was unlikely that a four-month old dog was trained, because normally one to two years are needed to train a support animal.

After this conversation, Beever returned to the main entrance of the casino, and told Thompson of his conversation with the ADA representative. Specifically, Beever noted the advice that he was permitted to ask Thompson about his dog's training and that he could refuse the dog access if Thompson failed to provide that information. Beever then asked Thompson again what his dog was trained to do, and again Thompson refused to answer.

Thompson's continued refusal to answer that question came as a surprise to Beever who, during his employment with Dover Downs, had encountered approximately 10 to 15 persons, other than Thompson, who had been accompanied by support animals. Beever had asked these persons questions about the training of their support animals, and each person had volunteered that information without argument and was permitted to enter the casino with the support animal.

Because of Thompson's unwillingness to provide any information about his dog's training, and because of the age and attire of Thompson's dog, Beever could not confirm that the dog was a support animal. Accordingly, he informed Thompson that he would not permit the dog to enter the casino. Beever did, however, advise Thompson that he was welcome to enter the casino without the dog. Thompson refused, then requested (and received) the security officers' names and badge numbers, and left the casino shortly thereafter.

## B. The DHRC Proceeding And Decision

Approximately two months later, in late September 2002, Thompson filed a complaint with the DHRC alleging that Dover Downs had discriminated against him because of his disability, in violation of Section 4504 of the Delaware Equal Accom-

3. In this type of situation, it is standard security procedure at Dover Downs to contact a superior officer.

4. 42 U.S.C. §§ 12101–12213 (2002).

modations Law ("DEAL").[5] Section 4504, on which Thompson based his claim of discrimination, states:

> No person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, shall directly or indirectly refuse, withhold from or deny to any person, on account of race, age, marital status, creed, color, sex, handicap or national origin, any of the accommodations, facilities, advantages or privileges thereof. For the purpose of training support animals to be used by the handicapped, all trainers and their support animals shall be included within those covered by this subsection.[6]

Because the Delaware statute is "substantially the same" as Title III of the Americans with Disabilities Act of 1990 (the "ADA") both the DHRC and the Superior Court relied on principles of federal law as the interpretative framework and guide for interpreting the counterpart Delaware statute. The three-pronged test for discrimination under Title III of the ADA, as first articulated in *McDonnell Douglas Corp. v. Green,*[7] requires that: (1) the plaintiff must establish a *prima facie* case of discrimination; (2) once the *prima facie* case is established, the burden shifts

to the defendant to produce evidence of a legitimate, non-discriminatory reason for denying plaintiff access; and (3) if the defendant meets that burden, the plaintiff must carry the burden of proving, by a preponderance of the evidence, that the defendant's proffered reason was a pretext for discrimination.[8]

Applying this test in performing its analysis, the DHRC Panel determined, in a Decision and Order issued on December 11, 2003, that Dover Downs was a place of public accommodation; that Thompson was a handicapped person within the meaning of the statute; that Thompson's dog was a "support animal" within the meaning of the statute; that Thompson had made out a *prima facie* case of discrimination by showing that he was denied access to a place of public accommodation when members of the general public were not denied access; and that Dover Downs had failed to show a legitimate, nondiscriminatory reason for denying Thompson access.[9]

More specifically, the Panel concluded that: (1) Thompson had made out a *prima facie* case of discrimination by establishing that he was a handicapped person who was denied access to the casino with his sup-

---

5. *6 Del. C.* §§ 4501–4512 (1999).

6. *6 Del. C.* § 4504(a) (1999).

7. 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (articulating that test for discrimination in the context of a claim brought under Title VII of the Civil Rights Act of 1964).

8. Several Delaware courts have used that test as a framework for analyzing discrimination. *See, e.g., Quaker Hill Place v. State Human Relations Comm'n,* 498 A.2d 175, 182–83 (Del.Super.1985) (using the test to analyze discrimination based on mental handicap); *OTAC # 4 v. Waters,* C.A. No. 03A–11–004WLW, 2004 WL 1790124 (Del.Super. July

28, 2004) (using *McDonnell* to evaluate age discrimination under the DEAL); *DP, Inc. v. Harris,* No. 99A–12–2003, 2000 WL 1211151, at *6 (Del.Super. July 31, 2000) (analyzing racial discrimination under the DEAL); *Uncle Willie's Deli v. Whittington,* C.A. No. 98A–04–006, 1998 WL 960709, at *4 (Del.Super. Dec. 31, 1998).

9. As earlier noted, the Decision awarded Thompson $5,000 in damages for humiliation and embarrassment allegedly caused by Dover Downs, and also assessed a $5,000 civil penalty against Dover Downs as a first offense under the DEAL. In addition, the Decision required Dover Downs to "establish a policy for dealing with handicapped person using support animals."

port animal; and (2) the non-discriminatory reason advanced by Dover Downs for denying access was. that its employees doubted that the animal was a support animal because of the dog's young age, the nylon cord affixing the support vest, and Thompson's refusal to answer questions about the dog's training. The Panel found further: that (3) Dover Downs' reasons for denying Thompson's dog access were "unworthy of credence;" that (4) Thompson's access to the casino had "already been denied by the time the supervisors asked questions concerning the dog's training;" and that (5) "the Panel does not believe that Thompson's answers to oral questions [by Dover Downs' security officers] would have gained him entrance into the facility."[10]

### C. The Superior Court Decision

The Superior Court reversed the Decision and Order of the DHRC, on the ground that it had committed a reversible error of law and had made an erroneous finding of a material fact. The Superior Court determined that the case presented only one central question: whether under the DEAL, the Dover Downs security personnel were entitled to ask Thompson what tasks his dog was trained to perform and, upon his refusal to answer, were entitled to deny Thompson access with his dog. The Superior Court answered that question in the affirmative, relying upon the guideline contained in the ADA Business Brief issued by the United States Department of Justice ("USDOJ"), which stated that:

> Businesses may ask if an animal is a service animal or ask what tasks the

animal has been trained to perform, but cannot require special ID cards for the animal or ask about the person's disability.[11]

That guideline essentially reflected the advice that Shift Manager Beever had been given by the person answering the "ADA information line." Because the Superior Court found that that inquiry was reasonable, it adopted the Department of Justice's interpretation of the ADA and held that under the analogous DEAL, a business owner is entitled, as a condition to granting access to a disabled person being accompanied by an animal, to ask what tasks the alleged support animal has been trained to perform:

> This question may be asked if the animal is wearing a support vest, or if it is not and the disabled person simply identifies it as a support animal. In some cases. those tasks may be a matter of common knowledge, such as in the case of a seeing eye dog. That was not the case here. The tasks to be performed by the support animal in his case were not readily apparent. Once the disabled person states the tasks that the support animal is trained to perform, access must be granted. If the disabled person refuses to answer the question, access of the disabled person with the animal may be denied.[12]

Because it was undisputed that Dover Downs' security personnel were entitled to—and did—ask Thompson what tasks his dog was trained to do, and that Thompson refused to answer, the Superior Court determined that denying Thompson access with his dog did not violate the DEAL.

---

**10.** *Thompson v. Dover Downs*, K–PA–579–02–A, Panel Decision & Order, at 5 (Human Relations Comm'n Dec. 11, 2003).

**11.** Citing U.S. Department of Justice: Civil Rights Division, *ADA Business Brief: Service*

*Animals, available at www.ada.gov/svc animb.htm* (last visited Oct. 24, 2005).

**12.** *Dover Downs v. Thompson, supra,* note 2.

The DHRC Panel's contrary ruling was legally erroneous, the Superior Court held, because the DHRC failed to recognize that a business owner may lawfully ask the disabled person what tasks his support animal is trained to perform. Moreover, because Dover Downs was entitled to ask Thompson that question, and because Thompson refused to answer, the Panel's finding that that explanation for denial of access offered by Dover Downs was "unworthy of credence," lost any legal force. Finally, the Superior Court held, the Panel's finding that Thompson would have been denied access regardless of answers he might have given to Dover Downs' questions, was not supported by substantial evidence.[13]

## THE CONTENTIONS AND ISSUES PRESENTED

Thompson's position on appeal amounts, in essence, to an argument that the DHRC's determinations were legally correct and supported by substantial evidence, and that the Superior Court erred in concluding otherwise. Thompson advances three claims of error. First, he contends that he successfully established (and that the DHRC correctly found) a *prima facie* case of discrimination, because he was a person with a disability who was denied access to Dover Downs, whereas persons who were not disabled were not denied access.

Second, Thompson argues, the DHRC properly found that Dover Downs had not discharged its burden of establishing a legitimate, non-discriminatory reason for de-

nying Thompson access, because Dover Downs articulated reasons were unworthy of credence and, thus, pretextual. That legal ruling and finding of fact were correct, Thompson urges, because: (1) the DHRC's decision was grounded in demeanor evidence, and (2) the DHRC properly refused to give any weight to the USDOJ Business Brief, which is an interpretative gloss that is inconsistent with DEAL. More specifically, Thompson argues that under the Delaware statute, an animal's ability to perform certain tasks is an irrelevant inquiry, and that any concerns the security guards had about whether the dog was a support animal (whether in training or fully trained) should have been resolved by the certification card Thompson presented and by the fact that the animal was wearing a vest identifying it as a service dog.

Third, Thompson urges, even if the DHRC did commit reversible error, the Superior Court erred by not remanding the matter to the DHRC, as the appropriate fact-finder, to reevaluate the evidence consistent with the correct legal rule.

Of the claims described above, only the second and third are controverted. Both sides agree that Thompson presented a *prima facie* case of discrimination that shifted to Dover Downs the burden of proving a legitimate, non-discriminatory reason for denying Thompson access to the casino premises.[14] The parties also agree that if the Dover Downs personnel were entitled to verify that the dog accompanying Thompson was a support animal by asking what tasks the dog was trained to

**13.** As the Court explained: "Since Mr. Thompson would not explain what tasks his animal was trained to perform, the facts are undeveloped as to what might have happened if he had done so initially in response to Officer Brown's question, or later when asked by Officer Bryan and then Shift Manager Beever." *Id.* at 11.

**14.** It is undisputed that Dover Downs is a "place of public accommodation" within the meaning of 6 *Del. C.* § 4504(a) and as defined in 6 *Del. C.* § 4502(1). It is also undisputed that Thompson is a person with a "handicap" as defined in 6 *Del. C.* § 4502(8).

perform, then Thompson's refusal to answer those questions would justify denying access to the dog—assuming Thompson's refusal to answer was in fact the true reason for denying the dog access.

Thus, the issues presented on this appeal reduce to three. They are: (1) did the Superior Court err in determining that Dover Downs personnel were entitled to ask Thompson about the tasks his dog was trained to perform; (2) if not, did the Superior Court err by overturning the DHRC's finding that Thompson's refusal to answer those questions was not Dover Downs' true reason for denying access, but only a pretext; and (3) if the DHRC made an erroneous ruling of law, did the Superior Court err by not remanding the case to the DHRC for further fact finding? We conclude that the Superior Court did not err in any respect.

## A. The Right To Inquire Into The Dog's Training

Whether or not Dover Downs rebutted Thompson's *prima facie* showing of discrimination depends upon whether (1) Dover Downs' personnel were legally entitled to inquire into the training Thompson's dog had received, and (2) whether Thompson's refusal to answer those inquiries was Dover Downs' true reason for denying access to Thompson's dog. The first issue is legal; the second, factual. We address the legal issue initially.

Section 4502 of the DEAL defines a support animal as: "any animal individually trained to do work or perform tasks to meet the requirements of a physically disabled person, including, but not limited to, minimal protection work, rescue work,

pulling a wheelchair or fetching dropped items."[15] Neither the DEAL nor other Delaware law provides further guidance on how a business may proceed to identify such a "support animal." In such circumstances, it is common practice for Delaware courts to consider interpretations of analogous federal law that is "substantially the same" as the Delaware law.[16]

Because it found that Section 12182 of the ADA was "sufficiently similar" to Section 4504(a) of the DEAL, the Superior Court relied on the USDOJ's interpretation of the ADA. Section 12182 provides that:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or other accommodations of any place of public accommodation by any person who owns, leases ... or operates a place of public accommodation.[17]

That provision, and its counterpart provision in the DEAL, 6 *Del. C.* § 4504(a), are nearly identical. The only difference is that Section 4504(a) goes on (in the next sentence) to provide that "[f]or the purposes of training support animals to be used by the handicapped, all trainers and their support animals shall be included within those covered by this section." Thompson claims that that language evinces the General Assembly's specific intent to prohibit discrimination against support animals, even if those animals are not yet trained to perform certain task. Therefore, argues Thompson, under the DEAL an animal's ability to perform certain tasks is an irrelevant inquiry.

---

**15.** 6 *Del. C.* § 4502(8) (1999).

**16.** *See Riner v. Nat'l Cash Register,* 434 A.2d 375, 376 (Del.1981) (looking to federal decisions interpreting Title VII of the Civil Rights Act of 1964 in an age discrimination suit brought under Delaware law).

**17.** 42 U.S.C. § 12182 (2002).

Thompson reads too much into that sentence of Section 4504(a), which does not support, let alone compel, his reading. Nothing in the language of Section 4504(a) alters the conclusion that Section 4504(a) and Section 12182 of the ADA are substantially similar for purposes of permitting reliance upon the interpretation of the analogous federal law to guide the interpretation of the DEAL. Such reliance was necessary here, because nothing in the DEAL, or other Delaware law, instructs how a business may permissibly verify an animal's status as a "support animal."

■ The absence of such guidance was problematic here, because Dover Downs' security personnel were uncertain whether Thompson's dog was a support animal. Although Thompson could have resolved that uncertainty by answering the questions about the dog's training, he refused to do that. Instead, he referred Dover Downs' personnel to the ADA Information Line. The ADA Information Line representative advised Dover Downs' employee, consistent with the USDOJ Business Brief, that questions about the dog's training were permissible. Having himself referred Dover Downs to the ADA Information Line for guidance, Thompson now argues that it was error for the Superior Court to hold that Dover Downs properly relied upon the source of that guidance— the USDOJ Business Brief, which interpreted the analogous federal statute. Apart from failing to disprove the manifest similarity between Section 4504 of the DEAL and Section 12182 of the ADA, Thompson's position is at odds with his own contemporaneous conduct.

The Superior Court correctly concluded that Dover Downs' personnel were entitled to ask Thompson about his dog's training.[18]

### B. No Substantial Evidence That Dover Downs' Stated Reason For Denying The Dog Access Was Pretextual

The second issue is whether the DHRC properly found that Dover Downs' reason for denying Thompson access to the casino accompanied by his dog was untruthful. Dover Downs' stated reason for denying access was that its security personnel doubted Thompson's claim that the dog was a support animal because of the dog's young age, the nylon cord affixing its vest, and Thompson's refusal to answer questions about its training.

■ The DHRC found this explanation to be "unworthy of credence," because (1) the vest and identification card established that the dog was a support animal, (2) the dog's age and the method of attaching the vest were not indicative of whether or not the dog was a support animal, (3) Thompson's answers to Dover Downs' questions would not have gained him access to the facility and (4) access had already been denied by the time the supervisors asked questions concerning the dog's training.

The Superior Court correctly determined that there was no substantial evidence of record to support the DHRC's conclusion that Dover Downs' proffered reasons for denying access were a sham. As previously discussed, inquiry into the dog's training was legally permitted and Thompson knew it. Indeed, at the hearing before the DHRC, Thompson admitted that it was permissible for security personnel to have asked about the training, and

---

**18.** *See Grill v. Costco Wholesale Corp.,* 312 F.Supp.2d 1349 (W.D.Wash.2004) (holding that under the ADA it was permissible for the business to inquire about the task or function of the animal if it was not apparent from visual evidence that the animal was a support animal).

that he had been asked that question in the past and had no problem answering the question. Moreover, Thompson's own witness, Richard Hermann, testified that Thompson's dog was not a fully trained support animal on the date of the event, that Thompson could legitimately be asked about his dog's training and that he (Hermann) was not aware of any reason why Thompson could not have disclosed the nature of his dog's training.

Dover Downs' right to ask the questions is established, and Thompson's refusal to answer them is undisputed. On what rational basis, therefore, could a fact finder conclude that Dover Downs' refusal to admit Thompson accompanied by his dog into the casino was pretextual? There is no evidence, let alone substantial evidence, to support that conclusion. Thompson's refusal to answer legitimate questions about the dog's training, coupled with the dog's young age and the uncommon method of affixing its service vest, afforded Dover Downs personnel a genuine basis to doubt that the dog was a "support animal," as Thompson claimed it was. Nor is there any evidence to support the DHRC's conclusion that Dover Downs would have denied Thompson admission even if he had answered the questions. That conclusion, as the Superior Court found, is speculative and unsupported.

The Superior Court committed no error in finding no substantial evidence in the record to support the DHRC's conclusion that Dover Downs' reason for denying access to Thompson, accompanied by his dog, was pretextual.

## C. Whether The Case Should Have Been Remanded

Finally, Thompson urges that even if the Superior Court correctly ruled that Dover Downs was lawfully entitled to inquire into the dog's training, the Superior Court erred by not remanding the case to the DHRC to re-decide the dispute in accordance with the correct rule of law.

In this case a remand is unnecessary because there would be nothing for the DHRC to do.[19] Based on the record made before the DHRC, only one fact is material: whether Dover Downs' stated reason for denying Thompson access, accompanied by his dog, was pretextual. Two courts have now determined that there is no evidentiary basis in the record to conclude that it was. Therefore, nothing else remains to be done, and a remand would be a needless exercise.

### CONCLUSION

The judgment of the Superior Court is **AFFIRMED**.

**19.** *See General Motors Corp. v. Smith,* 1987 WL 11460, at *2 (Del.Super.Ct. May 26, 1987).